IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01053-REB-CBS

CYRUS GALLEGOS, a minor child, by his parents and next friends;
JASON GALLEGOS, for himself and Cyrus Gallegos; and
JENNIFER YARBROUGH, for herself and Cyrus Gallegos,
     Plaintiffs,

v.

THE CITY OF FORT LUPTON, COLORADO;
KEVIN HALLORAN, individually and in his official capacity as a Fort Lupton Police Officer;
CRYSTAL SCHWARTZ, individually and in her official capacity as a Fort Lupton Police Officer;
TERA N. MORRIS, individually and in her official capacity as a Fort Lupton Police Officer;
S. LUEDTKE, individually and in his official capacity as a  Fort Lupton Police Officer;
WELD COUNTY RE-8 SCHOOL DISTRICT;
MARK PAYLER, in his official capacity as Superintendent, Weld County RE-8 School District;
NATIVITY MILLER, individually and in her official capacity as Principal of Butler Elementary School;
STEPHANIE ANDERSON, individually and in her official capacity as Vice-Principal of Butler Elementary School; and
CANDACE KENSINGER, individually and in her official capacity as Principal of Fort Lupton Middle School.
     Defendants.

---

## RECOMMENDATION ON PENDING MOTIONS TO DISMISS

---

Magistrate Judge Shaffer

This matter comes before the court on the Motion to Dismiss Second, Third, Fourth, Sixth, and Eighth Claims (doc. #53) filed by Defendants City of Fort Lupton, Crystal Schwartz and Kevin Halloran (collectively the "City Defendants") on October 1, 2013.  Plaintiffs Cyrus Gallegos, Jason Gallegos and Jennifer Yarbrough filed their Response in Opposition to the City of Fort Lupton and Individual Defendants' Motion to Dismiss (doc. #60), on October 22, 2013, which was followed by the City Defendants' Reply in Support of Their Motion to Dismiss (doc. #67) on November 18, 2013.

Also before the court is Defendants Weld County School District RE-8, Mark Payler,[1] Nativity Miller, Stephanie Anderson and Candace Kensinger's (collectively, the "School District Defendants") Motion to Dismiss Counts Seven, Eleven, and Thirteen of the Amended Complaint (doc. #56), filed on October 1, 1013.  Plaintiffs filed their Response in Opposition (doc. #59) to this motion on October 22,2013.  The School District Defendants submitted their Reply to Plaintiffs' Response in Opposition (doc. #66) on November 18, 2013.

On April 22, 2013, this matter was referred to the Magistrate Judge to, *inter alia*, "to hear and make recommendations on dispositive matters that have been referred."  By separate memoranda, each of the pending motions has been referred to this court for recommendation.   During proceedings on January 14, 2014, the court heard argument on both of the pending motions.  I have carefully reviewed the motions and all related briefing, the entire court file, and the applicable case law.  For the following reasons, I recommend that the City Defendants' Motion to Dismiss be granted, and that the School District Defendants' Motion to Dismiss be granted in part and denied in part.

---

[1]By suing Superintendent Payler only in his official capacity, Plaintiffs are actually attempting to impose liability on his employer, Weld County RE-8 School District. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state); *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents"), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013).  Any claims against Defendant Payler are duplicative of the claims brought against Defendant Payler's employer, the Defendant School District. *Cf. Rubio v. Turner Unified School District No. 202*, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006) (dismissing as duplicative or redundant claims brought against individual defendants in their official capacity only where the governmental entity also was a named defendant in the action); *Glasgow v. Independent School District No. 1-29 of McClain County, Oklahoma*, No. CIV-04-254-M, 2005 WL 1258925, at *1 (W.D. Okl. May 25, 2005) (noting that "because the School District has been named as a defendant, any official-capacity suit against these individual defendants is redundant").  Accordingly, I recommend that Defendant Payler be dismissed from this action.

## PROCEDURAL HISTORY

This action has its antecedents in an earlier lawsuit commenced in Weld County District Court on April 20, 2012 by Jason Gallegos and Jennifer Yarbrough, on behalf of themselves and their minor son, Cyrus. That action, which included all of the current City Defendants and School District Defendants, as well as other individual defendants, stemmed from an incident that occurred on April 21, 2011 at Butler Elementary School in Fort Lupton, Colorado where Cyrus Gallegos was a ten-year-old student. In summary, Plaintiffs alleged that Cyrus had been improperly detained and interrogated by school officials and later by Fort Lupton police officers after he reported the presence of a gun at school. Although Cyrus was expelled from the school pending a hearing, those proceedings eventually were dropped and no further action was taken by either the School District or law enforcement authorities.

The first action was removed to the United States District Court on June 19, 2012, after Plaintiffs filed an Amended Complaint in Weld County District Court on May 31, 2012. Plaintiffs subsequently filed their Second Amended Complaint on July 10, 2012. That amended pleading asserted various constitutional violations pursuant to 42 U.S.C. § 1983, as well as violations of Colorado statutes and common law. On December 13, 2012, Chief Judge Krieger denied motions to dismiss filed by the City Defendants and the School District Defendants, but concluded that the Second Amended Complaint did not comply with Fed. R. Civ. P. 8 and 10, as it was impossible to determine "whether a plausible claim for relief ha[d] been pled," or "whose conduct is complained of, what specific rights were violated, and under what authority relief [was] sought." *See Gallegos v. City of Fort Lupton*, Civil Action No. 12-cv-01594-MSK-MEH, 2012 WL 6212852, at *3 (D. Colo. Dec. 13, 2012). Chief Judge Krieger directed counsel for Mr. Gallegos and Ms. Yarbrough to file yet another amended complaint within 14 days of her order, or risk dismissal of the Second Amended

Complaint without prejudice for failure to prosecute.  *Id.*

On December 27, 2012, Plaintiffs filed their Third Amended Complaint in Civil Action 12-cv-01595, which prompted motions to strike by the City Defendants and School District Defendants, arguing that Plaintiffs had failed to comply with Chief Judge Krieger's Order of December 13, 2012. On April 20, 2013, Mr. Gallegos and Ms. Yarbrough voluntarily dismissed their first lawsuit, as to all named defendants, pursuant to Fed. R. Civ. P. 41(a)(1).[2]

Assisted by new counsel, Plaintiffs filed the instant action on April 20, 2013.  Their  Verified Complaint (doc. #1) asserted thirteen claims for relief based on the same operative facts surrounding the April 21, 2011 incident in Butler Elementary School that had prompted the earlier lawsuit.  And once again, the City Defendants and School District Defendants filed motions to dismiss, arguing that Plaintiffs' Verified Complaint failed to state viable claims for relief and/or that Plaintiffs' state law claims were barred by Colorado's Governmental Immunity Act.  With those motions briefed and pending, Plaintiffs' counsel indicated at the August 28, 2013 Fed. R. Civ. P. 16 scheduling conference that their clients would be filing a Amended Complaint.  That pleading filed on September 16, 2013 remains the operative pleading in this case.

The Amended Complaint (doc. #45) alleges that on April 21, 2011, Cyrus Gallegos reported to school authorities at Butler Elementary School that he believed there was a gun in the school based on statements by other students that Cyrus overheard.  Once that information was transmitted to Principal

---

[2]Although Defendants in this action have not raised this issue, I note that Fed. R. Civ. P. 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court filed an action based on or including the same claim against the same defendant," the court may "order the plaintiff to pay all or part of the costs of that previous action."  *Cf. Crespo v. WFS Financial, Inc.*, 580 F. Supp. 2d 614, 625 (N.D. Ohio 2008) (the court exercised its discretion and granted costs to defendant after concluding that plaintiffs' decision to voluntarily dismiss their state action was a tactical decision to avoid likely involuntary dismissal, and finding that the subsequent federal action was based on the same facts and included some of same claims as the earlier state action).

Nativity Miller, she locked down the school, reported the incident to the Fort Lupton Police Department, and transferred Cyrus from his classroom to the school office.  *See* Amended Complaint, at ¶¶ 17-19.  Cyrus was questioned by Miller and Vice-Principal Stephanie Anderson, and then questioned by Officers Crystal Schwartz and Tera Morris after they arrived at the school.  According to the Amended Complaint, Schwartz and Morris ordered Cyrus to remove his clothing and conducted a pat-down search of his lower extremities.   During this exchange, Schwartz and Morris "repeatedly" accused Cyrus of lying "and threatened him with incarceration and jail."  *Id.* at ¶¶ 21-23.  During this same period, Officer S. Luedtke also purportedly confronted Cyrus and accused him of lying.  *Id.* at ¶ 26.  The Amended Complaint alleges that "[w]hen Cyrus next asked Schwartz to telephone his parents, Schwartz arrested him, paraded him past a group of schoolmates to a police cruiser parked at the school, where he was confined in view of classmates until [Officer] Halloran arrived and transported him to the police station."  *Id.* at ¶ 24.  Although Cyrus repeatedly asked to have his parents notified, those requests were ignored.  *Id.* at ¶ 25.

Plaintiffs claim that after Cyrus was brought to the Fort Lupton police station, he was "first interrogated in a small room with a video camera and was then moved to an interview room next to the chief's office, with a one-way glass through which the chief could observe the interrogation."  *Id.* at ¶ 31. The Amended Complaint also contends that no defendant "advised Cyrus of his constitutional rights during the several hours of interrogation at the school or the police station, prior to the arrival of his parents."  *Id.* at ¶ 31.  After his parents arrived and demanded that their son be charged or released, "Cyrus was released without charge."  *Id.* at ¶¶ 35-36.

Following the incident on April 21, 2011, Defendant Miller told Ms. Yarbrough that Cyrus was not permitted back in Butler Elementary and faced expulsion.  During the same period, Defendant Anderson allegedly "informed various individuals that Cyrus had brought a gun to school."  *Id.* at ¶¶

37 and 40.  Although expulsion proceedings had been initiated "based on the false information

promulgated and published by Anderson," those proceedings were terminated on April 27, 2011 and

Cyrus returned to Butler Elementary after missing five days of school.  *Id.* at ¶¶ 44-45.  Mr. Gallegos

and Ms.Yarbrough later complained to Principal Miller and Vice-Principal Anderson that "Butler

Elementary teachers had published the false information that Cyrus had brought a gun and/or drugs to

school," and asked that Anderson make "a public announcement exonerating Cyrus . . . but Anderson

refused."  *Id.* at ¶¶ 48 and 50.

    The Amended Complaint states that Cyrus began experiencing problems after he enrolled in

Fort Lupton Middle School in September 2011.  On several occasions in 2012, Principal Candace

Kensinger allegedly accused Cyrus of misconduct, "each time telling Cyrus that she had a witness to

the misconduct which, when Cyrus denied the misconduct and asked who had allegedly reported this,

turn out not to exist."  *Id.* at ¶ 70.  Plaintiffs allege that

> Cyrus has been subjected to continual acts of retaliation, cruelty, and unfair treatment
> by officials and employees at Butler Elementary School and Fort Lupton Middle
> School, where he has been repeatedly threatened with academic failure, mocked,
> taunted, and threatened by District employees, with the result that he now suffers from
> severe anxiety and depression and a hatred for school, and begs Yarbrough and
> Gallegos on a daily basis to move away from the District.

*Id.* at ¶ 99.

    The Amended Complaint asserts thirteen claims for relief, some of which are not the subject of

the pending motions to dismiss.[3]  The First Claim asserts a Fourth Amendment violation by

Defendants Halloran, Schwartz, Luedtke, and Morris, based upon Cyrus' detention and arrest without

probable cause or a warrant.  The Second Claim is brought pursuant to § 1983 and asserts a Fourth

Amendment violation by the City of Fort Lupton based on an alleged policy or custom to inadequately

---

[3]The pending motions to dismiss do not address the First, Fifth, Ninth, Tenth or Twelfth Claims
in the Amended Complaint.

train and supervise its police officers.  The Third Claim asserts a Fourteenth Amendment substantive due process violation on the part of Defendants Halloran, Schwartz and Luedtke, and Miller based upon their interrogation of Cyrus "without probable cause and without advising him of his *Miranda* rights and [without] exercising 'the greatest care' required by federal law."[4]  The Fourth Claim alleges a parallel Fourteenth Amendment due process violation by the City of Fort Lupton, again based on a failure to supervise or train.  The Fifth Claim alleges a Fourteenth Amendment procedural due process violation by Defendant Weld County RE-8 School District and Defendant Miller based upon Cyrus' improper removal from Butler Elementary School.  The Sixth Claim alleges that the City of Fort Lupton violated the First Amendment by maintaining a policy or custom that failed to address a culture of misconduct, official oppression and mistreatment of citizens within the Police Department that resulted in retaliatory conduct directed toward Plaintiffs.  The Seventh Claim asserts a comparable First Amendment retaliation claim against the Defendant School District and          Defendants Miller and Kensinger.  The Eighth Claim asserts a Fourteenth Amendment claim against Defendants Halloran, Schwartz, Luedtke, and Morris for their unconstitutional interference with Mr. Gallegos' and Ms. Yarbrough's parental or "family relationship" with Cyrus.

The Amended Complaint also includes several claims alleging violations of Colorado common law.  The Ninth Claim asserts that Defendant Schwartz assaulted Cyrus "by moving him against his will and touching his body to conduct a search without reasonable suspicion or probable cause" and by "taking physical possession of his person, . . . placing him in a police car, and transporting him to the police station against his will."  The Tenth Claim alleges false imprisonment by Defendants Halloran, Schwartz, Luedtke, and Morris.  The Eleventh Claim alleges that Defendants Miller and Anderson

---

[4]On October 1, 2013, Judge Blackburn granted an Order (doc. #52) approving Plaintiffs' Notice of Voluntary Dismissal - Counts Three and Nine Against Defendant Nativity Miller.

made defamatory communications about Cyrus.  The Twelfth Claim asserts outrageous conduct on the part of Defendants Halloran, Schwartz, Luedtke, and Morris, while the Thirteen Claim alleges outrageous conduct by Defendants Miller and Kensinger.

In their Motion to Dismiss, the City Defendants argue that the Amended Complaint fails to properly allege substantive due process claims against Defendants Schwartz and Halloran in their individual capacities and that such claims, even if properly asserted, are barred by the doctrine of qualified immunity.  The City of Fort Lupton also contends that Plaintiffs have failed to allege sufficient facts to support a plausible claim of municipal liability based upon a failure to train or supervise.  Similar arguments have been advanced by the School District Defendants in their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendants Miller and Anderson also contend that Plaintiffs' common law claims are barred by the Colorado Governmental Immunity Act.

## ANALYSIS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court lacks subject matter jurisdiction.  The determination of subject matter jurisdiction is a threshold question of law.  *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987).  The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992)

> Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking.  A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction.  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

*Stine v. Wiley*, No. 07-cv-01250-WYD-KMT, 2008 WL 4277748, at *3 (D. Colo. 2008) (internal

quotation marks and citations omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6),

the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the

light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010)

(quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not

rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will

not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  Faced with a

challenge under Rule 12(b)(6), a plaintiff finds no refuge by arguing "that a claim just shy of a

plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through

careful case management given the common lament that the success of judicial supervision in checking

discovery abuse has been on the modest side." *Id.* at 684 (quoting *Bell Atlantic Corp.*, 550 U.S. at

559).

A.      Plaintiffs' Claims Against Individual Defendants

Plaintiffs are asserting constitutional violations pursuant to 42 U.S.C. § 1983.  Section 1983

provides a civil cause of action for individuals who are deprived of "any rights, privileges, or

immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v.

SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  Section 1983 does not create any substantive rights;

rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional

law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "In order to successfully state a cause of action under section 1983, [Plaintiffs] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law."  *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998).

  1. *Qualified Immunity*

  Defendants Schwartz and Halloran have raised the defense of qualified immunity as to any claims asserted against them.  Under the doctrine of qualified immunity, government officials are immune from civil damages liability for constitutional torts as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Qualified immunity protects defendants not only from liability, but also from suit.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Such immunity is qualified in that it does not obtain when otherwise immune officials violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)).  Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

  This court must review Defendants' claim of qualified immunity "under the customary motion to dismiss standard."  *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.*  However, the court is also mindful of the United States Supreme Court's admonition that a ruling on the issue of qualified immunity should be made at the earliest possible stage of the proceeding in order to preserve the protections of the privilege.  *See Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part on other*

*grounds by Pearson v Callahan*, 555 U.S. 223 (2009).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).  In determining whether a right is clearly established, the relevant inquiry is "whether it would be clear to a [reasonable government official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*  The plaintiff bears the burden of showing with particularity facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right.  *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

The defense of qualified immunity also implicates the pleading requirements of Fed. R. Civ. P. 8(a).  *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir. 2008).  Qualified immunity insures that public officials are not subjected to "'broad-ranging discovery' that can be peculiarly disruptive of effective government." *Anderson v. Creighton*, 483 U.S. at 646 n. 6.

> Although we apply "the same standard in evaluating dismissal in qualified immunity cases as to dismissals generally," complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically involve complex claims against multiple defendants. . . . Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is sufficient clear.

*Robbins*, 519 F.3d at 1249.  The court will proceed to apply these standards to the claims asserted in

the Amended Complaint.

     2.    *Plaintiffs' Third Claim*

In their Third Claim, Plaintiffs allege that Defendants Halloran and Schwartz violated Cyrus'

substantive due process rights under the Fourteenth Amendment by "interrogat[ing] Cyrus without

probable cause and without advising him of his *Miranda* rights or exercising the 'greatest care'

required by federal law;" conduct that Plaintiffs contend "shocks the conscience." *See* Amended

Complaint, at ¶¶120 and 121.[5]  Defendants Halloran and Schwartz have moved to dismiss this Claim,

arguing that their alleged conduct "does not shock the conscience" and, therefore, does not rise to the

level of a substantive due process violation.  In their Response to Defendant Halloran's and Schwartz'

motion, Plaintiffs suggest that their substantive due process claim against Defendants' Halloran and

Schwartz is based on the "oppressive and coercive nature of the defendants' conduct," as demonstrated

by

> their arresting [Cyrus] and hauling him to jail in handcuffs, despite being convinced the
> entire thing was a joke, browbeating him, accusing him repeatedly of lying without any
> basis to believe he **was** lying, and refusing to honor his requests for the presence of his
> parents, to which he was legally entitled.  They decided not to advise [Cyrus] of those
> rights, because a *Miranda* advisement directly affects a voluntariness or involuntariness
> (as the product of coercion) analysis.

*See* Plaintiffs' Response in Opposition to the City Defendants' Motion to Dismiss, at 4.

Plaintiffs cannot based their substantive due process claim on the circumstances attendant to

Cyrus' detention and arrest.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989) (where a plaintiff's

rights are protected by a specific provision of the Constitution, such as the Fourth Amendment, then a

Fourteenth Amendment claim for substantive due process cannot be brought).  Claims involving

arrests and other "seizures" are governed by the Fourth Amendment, which secures the right against

---

[5]Although he is included in Claim Three, the docket sheet does not show service of the
Summons and Complaint on Officer Luedtke.

unreasonable seizures, and not the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal quotation marks and citation omitted).

Similarly, Defendants Halloran and Schwartz cannot be liable under § 1983 or the Fifth Amendment because they failed to give Cyrus *Miranda* warnings. *See Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1165 n.6 (10th Cir. 2003) (acknowledging that violations of *Miranda* rights do not subject police officers to liability under § 1983). *See also Carter v. DeKalb County, Georgia*, No. 12-15903, 521 F. App'x 725, 730 (11th Cir. 2013) (noting that a "§ 1983 plaintiff who had been interviewed for a crime but never given *Miranda* warnings and never charged with a crime stated no Fifth Amendment violation because he was never prosecuted for the crime and never compelled to be a witness against himself in a criminal proceeding"). Thus, the viability of Plaintiffs' Third Claim turns on whether Defendants' conduct in questioning Cyrus rises to a level of coercive interrogation that "shocks the conscience." *Cf. Tinker v. Beasley*, 429 F.3d 1324, 1327 (11th Cir. 2005).

The Due Process Clause of the "Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting the Due Process Clause of the U.S. Const. amend. XIV, sec. 1). "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994). "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government

action, even when taken to further a legitimate governmental objective." *Seegmiller v. Laverkin City*, 528 F.3d 762, 767 (10th Cir. 20098).  One strand of the substantive due process doctrine "protects an individual's fundamental liberty interest, while the other protects against the exercise of governmental power that shocks the conscience." *Id.*  The Third Claim fails under either application of the substantive due process doctrine.

The Tenth Circuit has noted that "a plaintiff asserting a substantive due process right must both (1) carefully describe the right and its scope; and (2) show how the right as described fits within the Constitution's notions of ordered liberty." *Seegmiller*, 528 F.3d at 769.   Substantive due process protects "fundamental rights," which are rights contemplated by the Constitution as "implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556.  However, [i]dentifying a new fundamental right subject to the protects of substantive due process is often an upheld battle, as the list of fundamental rights is short." *Seegmiller*, 528 F.3d at 770.

Plaintiffs argue that Defendants' interrogation of Cyrus implicated a fundamental liberty interest based upon C.R.S. §§ 19-2-511 and 22-33-106, which provide that if a minor child is questioned without the presence of his parents, no statement made by the child can be used in a juvenile or expulsion proceeding.  Plaintiffs' reliance on those state statutes as a basis for Cyrus' substantive due process claim is misplaced.  Those statutes were enacted to ensure that any waiver of a minor child's Fifth and Sixth Amendment rights would be made knowingly and voluntarily, but do not create a new "fundamental right" protecting children from any questioning by authorities. *See, e.g., People in Interest of G.L.*, 631 P.2d 1118, 1120 (Colo. 1981). *Cf. Chavez v. Martinez*, 538 U.S. 760, 776 (2003) (suggesting that a "fundamental liberty interest" for purposes of substantive due process analysis does not included a generalized "right not to be talked to").  Plaintiffs have not directed the court to any precedent that would suggest that Cyrus' interrogation, standing alone, implicated a

"fundamental right" encompassed by substantive due process protections.

If Plaintiffs' Third Claim is to survive a motion to dismiss, it must do so under the "shocks the conscience" prong of the substantive due process doctrine.

> Conduct that shocks the judicial conscience . . . is deliberate government action that is "arbitrary" and "unrestrained by the established principles of private right and distributive justice. This strand of substantive due process is concerned with preventing government officials from "abusing their power, or employing it as an instrument of oppression." Not all government conduct is covered however, as "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."

*Seegmiller*, 528 F.3d at 767 (internal citations omitted). *Cf. Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (noting that to properly allege a substantive due process violation, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power") (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)).

In their Response to the City Defendants' motion, Plaintiffs suggest that their substantive due process claim "is legally sound as pled," citing as supporting authority the plurality opinion in Chavez. Plaintiffs construe that opinion, and the Ninth Circuit's subsequent decision in *Martinez v. City of Oxnard*, 337 F.3d 1091 (9th Cir. 2003) as recognizing a substantive due process guarantee against coercive police interrogation. I do not believe that *Chavez* can be read as broadly as Plaintiffs might wish. The majority opinion in *Chavez* remanded the case back to the trial court to determine whether the plaintiff "may pursue a claim of liability for a substantive due process violation," as well as the scope and merits of such an action. *Chavez*, 538 U.S. at 779-80. The decision in *Chavez* did not, however, alter the standard for applying the "conscience shocking" test: "official conduct 'most likely to rise to the conscience shocking level' is . . . 'conduct intended to injury in some way unjustifiable by any government interest.'" *Id.* at 775. A substantive due process violation is not measured by "private sentimentalism," *Rochin v. California*, 342 U.S. 165, 172 (1952), and does not occur simply because

"someone clothed with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Rather, the substantive due process analysis focuses on whether the conduct at issue is "shocking to the universal sense of justice." *Id.* at 850 (quoting *Betts v. Brady*, 316 U.S. 455, 462 (1942)).[6] Whether a defendant's conduct rises to that level also remains an issue of law for the court. *See, e.g., Crowe v. County of San Diego*, 359 F. Supp. 2d 994 1030-31 (S.D. Cal. 2005) and cases cited therein.

Although I accept the well-pled allegations of the Amended Complaint, I do not find that Plaintiffs have alleged facts that rise to the level of a plausible substantive due process violation. Focusing solely on the circumstances of Cyrus' interrogation, Plaintiffs allege that Defendant Schwartz repeatedly accused Cyrus of lying, threatened him with incarceration, continued to question him at the police station without allowing access to his parents, and did not immediately explain that he had the right to remain silent. It is undisputed that Cyrus was ten-years-old on April 21, 2011. However, there is no allegation that Halloran or Schwartz used force in order to extract an incriminating statement, or refused any requests for bathroom breaks. Also, it is not clear from the Amended Complaint how long Cyrus was questioned at the police station before his parents arrived

---

[6]As the court noted in *Kuyper v. Board of County Commissioners of Weld County, Colorado*, No. 09-cv-00342-PAB-MEH, 2010 WL 1287534 (D. Colo. Mar. 30, 2010), the "conscience shocking" standard

> "traditionally only involved deliberately wrongful government decisions rather than merely negligent government conduct." This deliberateness requirement can be satisfied by demonstrating "'an intent to place a person unreasonably at risk,'" which has been defined as "when a state actor 'was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious disregard and unreasonable disregard of the consequences.'"

*Id.* at *8 (quoting *Uhrig v. Harder*, 64 F.3d 567, 573-74 (10th Cir. 1995)). *Cf. Thayer v. Washington County School District*, 858 F. Supp. 2d 1269, 1280 (D. Utah 2012) (acknowledging that the "shock the conscience" standard requires "culpable knowledge," which is satisfied by a showing of actual wrongful intent or a level of recklessness that exceeds mere negligence or gross negligence).

16

and were permitted to speak with their son.  I am not discounting the stressful nature of this interrogation, particularly for a minor child.  *But see Crowe v. County of San Diego*, 359 F. Supp. 2d 994, 1034 (S.D. Cal. 2005) (holding that the use of questions that elicit an emotional response does not necessarily transform the interrogation of a juvenile into one that "shocks the conscience").  Rule 12(b)(6), however, limits my analysis to the facts alleged in the Amended Complaint, and under those facts, I cannot conclude that  Defendants Halloran and Schwartz acted in "conscious disregard and unreasonable disregard," or that their actions were so oppressive or so egregious as to shock the conscience or the universal sense of justice.[7]  I recommend that the Third Claim against Defendants Halloran and Schwartz be dismissed.

3.      *Plaintiffs' Eighth Claim*

Plaintiffs' Eighth Claim also alleges a substantive due process violation based on Defendants' Halloran's and Schwartz's interference with the "family relationship" between Cyrus and his parents. The Amended Complaint asserts that Jason Gallegos and Jennifer Yarbrough "possess a fundamental liberty interest in the companionship and society" of their minor son, that was violated by Defendants' "actions in wrongfully detaining and interrogating Cyrus and refusing to contact Gallegos or Yarbrough."

In moving to dismiss this Claim, Defendants Halloran and Schwartz argue that the Amended Complaint does not allege facts that would demonstrate they acted with the intent to interfere with the parents' relationship with Cyrus or with knowledge that their statements or conduct would adversely affect that relationship.  In support of this argument, Defendants rely upon the Tenth Circuit's decision

---

[7]While the court has undertaken its own analysis of the law and facts governing the instant motions, I note that Plaintiffs in their earlier lawsuit raised the same substantive due process claim and relied on the decision in *Chavez*.  Magistrate Judge Hegarty concluded on the same facts that Plalintiffs' allegations "do not demonstrate the officers' conduct was either 'egregious' or 'conscience shocking.'" *Gallegos v. City of Fort Lupton,* 2012 WL 6212856, at *16.

in *Trujillo v. Board of County Commissioners of the County of Santa Fe*, 768 F.2d 1186 (10th Cir.

1985) and *J.B. v. Washington County*, 127 F.3d 919 (10th Cir. 1997).   The Tenth Circuit has held that

while the parental relationship "may warrant the greatest degree of protection," "an allegation of intent

to interfere [with that particular relationship] is required to state a claim under section 1983." *Trujillo*,

768 F.2d at 1189-90.   Moreover, "the alleged conduct by the State . . . will work an unconstitutional

deprivation of the freedom of intimate association only if the conduct is directed to that right." *Id.* at

1190.

Plaintiffs concede that given "the state of the law today, . . . only official conduct directed at

the family relationship is actionable, and only when the actor knew the conduct would, or intended to,

adversely affect that relationship." *See* Plaintiffs' Response in Opposition (doc. #60), at 11.   Mr.

Gallegos and Ms Yarbrough insist, however, that the Amended Complaint alleges sufficient facts to

survive under Rule 12(b)(6) because they presume that "[n]o reasonable adult could have failed to

know that depriving a child of his trust in parental protection is certain to harm the family

relationship." *Id.* at 12.

The "protections of substantive due process have for the most part been accorded to matters

relating to marriage, family, procreation, and the right to bodily integrity." *Becker v. Kroll*, 494 F.3d

904, 923 (10th Cir. 2007) (quoting *Albright v. Oliver*, 510 U.S. at 272).   *See also Planned Parenthood

of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 851 (1992) (acknowledging that constitutional

protections extend to personal decisions relating to, *inter alia*, family relationships and child rearing,

and that Supreme Court precedents "have respected the private realm of family life which the state

cannot enter").   As the Tenth Circuit noted in *Starkey ex rel. A.B. v. Boulder County Social Services*,

569 F.3d 1244, 1253 (10th Cir. 2009) (internal citations omitted),

> "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental
> right of parents to make decisions concerning the care, custody, and control of their

children."  But this right to family integrity "has never been deemed absolute or unqualified." "Courts have recognized that the constitutional right to familial integrity is amorphous and always must be balanced against the governmental interest involved."

"Substantive due-process rights guard against the government's 'exercise of power without any reasonable justification in the service of a legitimate governmental objective.'"  *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (quoting *County of Sacramento*, 523 U.S. at 846).  Stated differently, to properly allege a substantive due process violation of the right to family integrity, a plaintiff must allege harmful conduct that shocks the conscience or offends the community's sense of fair play and decency.  *Rosenbaum v.Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011).

Plaintiffs summarily suggest, without any real analysis or explanation, that *Trujillo* was "wrongly decided."  *See* Plaintiffs' Response in Opposition (doc. #60), at 11.  Yet, in *Suasnavas v. Stover*, No. 05-5171, 196 F. App'x 647, 650 (10th Cir. 2006), the Tenth Circuit reaffirmed that *Trujillo* "placed an important limitation on the right of familial association" by requiring "an allegation of intent to interfere" with the familial relationship.  *Accord Estate of Herring ex rel. Fort v. City of Colorado Springs*, No. 06-1166, 233 F. App'x 854, 856 (10th Cir. 2007) (noting that Tenth Circuit precedent "clearly preserve direction and intent as a requirement for stating a cause of action for violation of the constitutional right to familial association"); *Vigil v. South Valley Academy*, no. 06-2309, 247 F. App'x 982, 988 (10th Cir. 2007) ("a plaintiff claiming a violation of the right to familial association mus show that the defendant had the specific intent to interfere with the family relationship").

Although they concede that *Trujillo* remains controlling precedent, Plaintiffs suggest that whether they can ultimately prove their substantive due process claim presents a "question of fact, as opposed to pleading," and that their familial association claim "meets this standard."  *See* Plaintiffs' Response in Opposition (doc. #60), at 11.  In short, Plaintiffs hope to circumvent the pleading

requirement imposed by *Trujillo* by asking this court to disregard the holdings in *Iqbal* and *Twombly*. As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins,* 519 F.3d at 1247 (quoting *Bell Atlantic Corp.*, 555 U.S. at 556).

> "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." . . .  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, Nos. 08-cv-02790-PAB-MJW, 08-cv-02794-PAB-MJW, 2009 WL 2924777, at *2 (D. Colo. Sept. 9, 2009) (internal citations omitted)

Even when construed in a light most favorable to Plaintiffs, the facts alleged in the Amended Complaint do not support a violation of the constitutional right to familial association.   It is clear that Defendants Schwartz and Halloran were pursuing a legitimate governmental objective, even if their underlying assumptions concerning Cyrus's actions or statements on April 21, 2011 were incorrect. *Cf. Cox v. Warwick Valley Central School District*, 654 F.3d 267, 275 (2d Cir. 2011).  There are no facts alleged in the Amended Complaint that would demonstrate, or even suggest, that Defendants Schwartz and Halloran intended or directed their conduct at the familial relationship between Cyrus and his parents, or that Defendants acted with knowledge that such conduct would adversely affect that relationship. *Cf. Tenenbaum*, 193 F.3d at 601 (holding that the minor child's temporary separation from her parents for a matter of hours did not result in the parents' "wholesale relinquishment of their right" to raise their daughter and, thus, did not constitute a violation of their substantive due process

rights); *J.B.*, 127 F.3d at 927-28 (in the absence of any allegation that defendants were motivated by some non-investigative purpose, the court found no violation of the constitutional right to intimate association even if defendants failed to use the least disruptive procedure to interview the minor child); *Wofford v. Evans*, No. 7:02CV00762, 2002 WL 32985799, at *7 (W.D. Va. Dec. 17, 2002) (holding that state action that affects a familial relationship only incidentally is not cognizable in a § 1983 due process claim).  I recommend that Plaintiff's Eighth Claim be dismissed.

        4.    *Plaintiffs' Eleventh and Thirteenth Claims*

Defendants Miller and Anderson have moved, pursuant to Rule 12(b)(6), to dismiss the Eleventh Claim, which alleges they made defamatory communications about Cyrus "willfully, wantonly, or in reckless disregard of the truth."  Defendants contends that the Amended Complaint fails to set forth facts that suggest that their actions or communications were willful or wanton as required by the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-118(2)(a).  Defendants Miller and Kensinger also invoke the same statutory provision in moving to dismiss the Thirteenth Claim, which alleges a claim for outrageous conduct.  In their Response in Opposition, Plaintiffs argue that they are not required to specifically plead "'willful and wanton' conduct against a public employee," and that the issue is one reserved to the trier-of-fact once the "complaint sets forth facts from which a claim of willful and wanton conduct arises."

The Colorado Governmental Immunity Act provides, with certain exceptions not applicable under the facts of this case,  that

> a public employee shall be immune from liability in any claim for injury . . . which lies in tort or could lie in tort . . and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton[.]

C.R.S. § 24-10-118(2)(a).  This "statute essentially extends the State of Colorado's sovereign immunity" to public employees.  *See Carani v. Meisner*, No. 08-cv-02626-MSK-CBS, 2009 WL

2762719, at *1 (D. Colo. Aug. 26, 2009) (noting that it was plaintiff's obligation to plead facts sufficient to allege that the defendant's conduct was "willful and wanton" so as to take the defendant outside the protection of CGIA). "Whether a plaintiff has pled sufficient fact to allege willful and wanton conduct is a matter to be determined by the Court." *Id.*

Although the Colorado Governmental Immunity Act does not define the phrase "willful and wanton," courts have looked to Colorado's exemplary damages statute, C.R.S. § 13-21-102(1)(b), which defines "willful and wanton conduct" as "conduct purposely committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *See, e.g, Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994). *Cf. Rhoden v. O'Hayre*, No. 11-cv-01734-PAB-CBS, 2014 WL 1224464, at *8 (D. Colo. Mar. 24, 2014); *A.B. ex rel. B.S. v. Adams-Arapahoe 28J School District*, 831 F. Supp. 2d 1226, 1258   (D. Colo. 2011).  As the Colorado Supreme Court has explained, "willful and wanton misconduct connotes acts or omissions that extend beyond mere unreasonableness" and are the "result of an active and purposeful intent." *Terror Mining Company, Inc. v. Roter*, 866 P.2d 929, 934 (Colo. 1994) (citing *Pettingell v. Moede*, 271 P.2d 1038 (1954)).

The pending motion to dismiss also requires the court to distinguish between the CGIA's exception for "willful and wanton" conduct and the elements required to establish the underlying claim for defamation.  *Cf. Zerr v. Johnson*, 894 F. Supp. 372, 374 (D. Colo. 1995).  Where the defamation claim involves a private plaintiff and the statement pertains to a matter of general interest or public concern[8], the plaintiff must show that: (1) the defendant published or caused to be published a

---

[8] In the defamation context, "[t]he boundaries of public concern cannot be readily defined, but must be determined on a case-by-case basis.  Generally, a matter is of public concern whenever 'it embraces an issue about which information is needed or is appropriate,' or when 'the public may reasonably be expected to have a legitimate interest in what is being published.'" *McIntyre v. Jones*, 194 P.3d 519, 525 (Colo. App. 2008) (quoting *Williams v. Continental Airlines, Inc.*, 943 P.2d 10, 17

statement; (2) that the substance or gist of the statement was false at the time it was published; (3) that at the time of publication, the defendant knew the statement was false or the defendant made the statement with reckless disregard as to whether it was false; and (4) that the statement caused the plaintiff actual damage.  *See* CJI-Civ.22.1 (2014).[9]

> The import of "willfulness and wantonness" in the tort of defamation differs from that in C.R.S. § 13-21-102 by virtue of the object to which each is directed.  The question of how one could prove another knowingly and recklessly published a false statement about one is not the same as how one could prove a separate and additional element that the statement was published 'heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  The distinction is that in the first instance the statement is published knowing it is false or wantonly indifferent to its falsity, whilst in the second instance the publication is uttered with intent or reckless disregard of the injury it causes.

*Id.* at 376 (in dismissing plaintiff's claim, the court noted that plaintiff had improperly merged these two concepts and was relying on the exact same facts to establish both "willfulness and wantonness" under the CGIA and the elements of her defamation claim).

I conclude that the Eleventh Claim fails to state an actionable claim for defamation against Defendant Miller under the CGIA.  Construing the Amended Complaint in a light most favorable to Plaintiffs, as I must on a motion to dismiss, Plaintiffs alleged that on April 21, 2011, Cyrus reported to his music teacher "that he had heard a fellow student say, 'there's a gun' and then saw students gather around and look into a backpack."  *See* Amended Complaint, at ¶ 17.  Once this information was reported to Defendant Miller, she "locked down the school, announced to students in Cyrus' classroom that the school was being locked down because there were reports of a gun in school" and then removed Cyrus from his classroom.  *Id.* at ¶ 18.  When Cyrus repeated what he told his music teacher,

_____

(Colo. App. 1995)).

[9]Even if the Amended Complaint is construed to allege slander *per quod*, Plaintiffs still would be required to set forth facts showing that "the substance or gist of the statement was false at the time it was published."  *See* CJI-Civ.22.2 (2014).

Defendants Miller and Anderson "returned with two other boys who had been with Cyrus when he heard the remark, and questioned the three both individually and together." *Id.* at ¶ 20. When Ms. Yarbrough learned that Butler Elementary had been locked down and went to pick up her son, "Miller announced publically that Yarbrough should come to the office immediately because *her son was involved in the incident.*" *Id.* at 27 (emphasis supplied). That single statement attributed to Defendant Miller forms the basis for her inclusion in the Eleventh Claim.

The defamation claim against Ms. Miller hinges on the truthfulness of her alleged statement; *i.e.,* that Cyrus "was involved in the incident" that precipitated the decision to lock down Butler Elementary. *Cf. Fry v. Lee*, __ P.3d __, 2013 WL 3441546, at *4 (Colo. App. June 20, 2013) (holding that " claim for defamation requires, at a minimum, the publication of a false statement of a defamatory nature" and "substantial truth is an absolute defense to a defamation claim"). To defend against a claim of defamation, a defendant need not establish that the challenged statement was "absolutely true;" "instead a defendant need only show substantial truth, that is 'the substance, the gist, the sting of the matter is true." *Gomba v. McLaughlin*, 504 P.2d 337, 339 (Colo. App. 1972). "Whether a statement is defamatory is a question of law." *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004).

First, I find as a matter of law that Principle Miller's April 21, 2010 statement does not rise to the level of defamation. If the Amended Complaint accurately paraphrases Defendant Miller's comment (and I have no reason to believe it does not), the comment that Cyrus "was involved in the incident" is true.[10] According to the Amended Complaint, Ms. Yarbrough went to Butler Elementary after she learned it had been locked down. Plaintiffs concede that Principle Miller locked down the

---

[10] Webster's Encyclopedic Unabridged Dictionary of the English Language (2001 ed.) defines "incident" to mean "an individual occurrence or event; a distinct piece of action, or an episode."

school based upon information that Cyrus reported to his music teacher and then repeated in response to questioning by Miller and Anderson.  In that respect, Cyrus' report triggered in the decision to close the school and precipitated the actions that unfolded.  Indeed, it would be impossible for anyone to describe the events of April 21, 2010 without mentioning Cyrus.

I further find that the Amended Complaint does not set forth any well-pled facts that would demonstrate, or even suggest, that Defendant Miller's statement was made "heedlessly and recklessly, without regard to consequences" or Cyrus' rights and safety.  While Defendant Miller might have asked Ms. Yarbrough to come to her office in a more discrete manner, I find nothing in the facts alleged in the Amended Complaint to indicate that Defendant Miller acted with a purposeful intent or from a conscious desire to cause harm to Cyrus.  Accordingly, I conclude that the Eleventh Claim should be dismissed as to Defendant Miller.

The defamation claim against Defendant Anderson is a closer question.  The Amended Complaint alleges that Defendant Anderson "informed various individuals that Cyrus had brought a gun to school on April 21, 2013" and that Anderson published that "false information" about Cyrus. *See* Amended Complaint, at ¶¶ 40 and 46.  Plaintiffs further contend that the School District's decision to schedule an expulsion hearing for Cyrus on April 26, 2010 was "based on the false information promulgated and published by Anderson." *Id.* at ¶ 42.

Construing the Amended Complaint in a light most favorable to Plaintiffs, I cannot conclude that Defendant Anderson's statements were incapable of a defamatory meaning or effect as a matter of law.  The Amended Complaint alleges that Cyrus merely reported that he had heard a fellow student say ,"there's a gun."  Ms. Anderson questioned Cyrus and two other boys who were with Cyrus when he heard the reference to a gun, and thus had some understanding of the relevant facts.  The Amended Complaint states that Cyrus was released by the Fort Lupton Police Department without being charged

25

with any criminal offense.  By way of reasonable inference, law enforcement authorities had insufficient proof to charge Cyrus with bringing a gun to Butler Elementary.  Plaintiffs further state that Ms. Anderson's publication of false information damaged their reputations, subjected them to repeated questioning by members of the community, and adversely impacted Cyrus' relationship with classmates.  *Id.* at ¶¶ 46 and 52.

For purposes of the pending motion only, the court finds that Ms. Anderson's statement identifying Cyrus as a person who brought a gun to school could be considered defamatory to the extent that cast Cyrus in a negative light and caused him to be shunned or avoided.  *Cf. Glaeser v. Academy School District 20*, No. 01-CV-00384-JLK(CBS), 2005 WL 2592477, at *3 (D. Colo. Oct. 13, 2005).  I further find that the Amended Complaint alleges sufficient facts to suggest that Defendant Anderson published her statement heedlessly and recklessly, without regard to consequences to Cyrus.  *Cf. Jordan v. Cooley*, No. 13-cv-01650-REB-MJW, 2014 WL 923279, at *1 (D. Colo. March 10, 2014) (Blackburn, J.) (noting that even after *Iqbal*, the Rule 12(b)(6) standard "remains a liberal one, and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely'").

As for Plaintiffs' claim for outrageous conduct against Defendants Miller and Kensinger, I find that the Thirteenth Claim fails under Rule 12(b)(6).  To prove a claim for outrageous conduct, Plaintiffs must show that:  (1) Miller and Kensinger engaged in extreme and outrageous conduct; (2) that they did so recklessly or with the intent to cause Cyrus severe emotional distress; and (3) that Defendants' conduct caused Cyrus severe emotional distress.  *See Reigel v. SavaSeniorCenter LLC*, 292 P.3d 977, 990  (Colo. App. 2011).  However, the conduct that forms the underpinning of an outrageous conduct claim "must be 'so extreme in degree as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." *Winkler v.*

*Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152, 160 (Colo. App. 1995) (citing

*Rugg v. McCarty*, 476 P.2d 753, 756 (1970)).  While mere indignities, annoyances or "petty

oppressions" will not suffice to establish the level of outrageousness required for this cause of action,

*Pearson v. Kancilia*, 70 P.3d 594, 497 (Colo. App. 2003), "[c]onduct, otherwise permissible, may

become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or

apparent authority over the other."  *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo.

App. 1982).

> In determining whether a plaintiff has alleged behavior that is outrageous as a matter of law, the trial court must analyze the totality of the defendant's conduct.  Generally, liability for outrageous conduct exists when "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'"

*Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009).

Fairly construed, the Amended Complaint contends that Defendants' conduct on and after April

21, 2010 was, in the aggregate, so outrageous as to exceed all bounds of decency.  Plaintiffs contend

that Miller and Kensinger allowed their employees "to engage in the promulgation of untrue

statements concerning and vicious acts of retaliation against Cyrus" and then approved or ratified that

conduct.  *See* Amended Complaint, at ¶ 169.  Yet on closer examination, the factual averments in the

Amended Complaint do not substantiate these sweeping assertions.  In the case of Defendant Miller,

the Amended Complaint references her statement on April 21, 2010 and then a meeting that Defendant

Miller had with Mr. Gallegos approximately two weeks later.  At that meeting, Mr. Gallegos

complained that teachers at Butler Elementary "had published the false information that Cyrus had

brought a gun and/or drugs to school" and told Principal Miller that he expected her to "instruct the

teachers to correct the misinformation they had put out into the community."  *See* Amended Complaint

at ¶ 48.  Mr. Gallegos also asked Principal Miller notify him once she had instructed her teachers to

stop making false statements about Cyrus and/or correct any false statements they had already made. *Id.* at ¶ 51.  The Amended Complaint alleges that Defendant Miller never provided him with the requested notification and Mr.Gallegos "continued to receive reports that Butler Elementary teachers implicated Cyrus in criminal conduct."  *Id.*  Finally, the Amended Complaint avers that Defendant Miller never made any attempt to mitigate the harm caused to Cyrus' or his family's reputation "caused by [her] untrue statements and failure to correct the statements of teachers at the school."  *Id.* at 53.

Courts have held that false allegations that a person has engaged in criminal conduct fail to rise to the level of outrageous conduct.  *See, e.g., Harris v. AmeriGas Propane Inc.*, No. 12-cv-00860-RBJ-MEH, 2012 WL 7051302, at *5 (D. Colo. Dec. 5, 2012) and cases cited therein.  *Cf. Partminer Worldwide Inc. v. Silliconexpert Technologies Inc.*, No. 09-cv-00586-MSK-MJW, 2010 WL 502718, at *4 (D. Colo. Feb. 10, 2010); *Dorr v. C.B. Johnson, Inc.*, 660 P.2d 517, 521 (Colo. App. 1983).  *Cf. Drussel v. Elko County School District*, No. 3:12-cv-00551-HDM-WGC, 2013 WL 3353531, at *4 (D. Nev. July 2, 2013) (finding that defendants' conduct was not sufficiently extreme or outrageous to state a claim for intentional infliction of emotional distress where plaintiff alleged that school officials had wrongfully accused his minor son of violating school policies)

The Amended Complaint also contends that Defendant Kensinger, Cyrus and his parents had a series of interactions and disagreements concerning how school disciplinary procedures were being applied to Cyrus.  Plaintiffs insist that Defendant Kensinger's actions were unwarranted and "beyond all bounds of decency."  I accept that the parties have decidedly different interpretations of the events in this case that occurred at Fort Lupton Middle School.  However, the issue of whether conduct is so extreme and outrageous as to trigger tort liability must be measured by an objective, rather than subjective, standard.  *Cf. Davis v. Metropolitan Pier & Exposition Authority*, No. 11 C 9018, 2012 WL

2576356, at *15 (N.D. Ill. July 3, 2012) ("'[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct"). I do not find that the Amended Complaint alleges conduct on the part of Defendant Miller or Defendant Kensinger that was "atrocious, and utterly intolerable in a civilized community." *Cf. Carani v. Meisner*, 2009 WL 2762719, at *1 (noting that the trial court may dismiss a claim for outrageous conduct if "it finds that reasonable minds could not differ on the question"). *Cf. Corales v. Bennett*, 567 F.3d 554, 571-72 (9th Cir. 2009) (holding that a middle school vice principal did not engage in extreme and outrageous conduct by sternly lecturing a student or warning the student of the potential consequences of their actions); *Jones v. Bay Shore Union Free School District*, 947 F. Supp. 2d 270, 283 (E.D.N.Y. 2013) (dismissing plaintiff's claim for "extreme and outrageous conduct" that was based on defendants' decision to suspend his daughter following an altercation with another student); *Bass ex rel. Bass v. Miss Porter's School*, 738 F. Supp. 2d 307, 327-28  (D. Conn. 2010) (holding that plaintiff had not stated a claim for intentional infliction of emotional distress where the actions taken by school authorities were consistent with disciplinary measures outlined in the Student Handbook). The Thirteenth Claim against Defendants Miller and Kensinger should be dismissed.

B.      Plaintiffs' Claims Against The City and School District

The City of Fort Lupton has moved to dismiss all the claims against it (*i.e.,* Claims Two Four and Six) based on Plaintiffs' failure to allege any facts demonstrating any City custom, policy or practice that resulted in a violation of Plaintiffs' constitutional rights. The School District, in its motion, raises the same arguments with respect to Claim Seven. Indeed, Defendants contend that Plaintiffs' claims against Fort Lupton and the School District are based on nothing more than generalities, conclusory statements and conjecture. In their response briefs, Plaintiffs offer neither facts nor persuasive legal arguments to refute Defendants' position or sustain their claims against the

City or School District.

Section 1983 does not allow municipalities or school districts to be held vicariously liable for the unlawful acts of their employees under *respondeat superior* principles. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978); *Garland v. Board of Education of Denver Public Schools Dist. No. 1*, 11-cv-00396-REB-KMT, 2012 WL 1018740, at *8 (D. Colo. Mar. 26, 2012) (Blackburn, J.). *See also Lawrence v. School District No. 1*, No. 13-1157, 2014 WL 1259588, at *2 (10th Cir. Mar. 28, 2014) (noting that "municipal defendants – public school districts and school boards included – can't be held liable under 42 U.S.C. § 1983 solely because they employ a person who violated the plaintiff's constitutional rights"). Governmental entities may be liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a policy or custom. *Monell*, at 690-91, 694. "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-04 (1997).

The legal standards for imposing liability on a municipality or school district under § 1983 are well-established in both Supreme Court and Tenth Circuit precedents.

> [M]unicipal liability under § 1983 attaches where and only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

30

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175,1188-89 (10th Cir. 2010) (internal citations omitted).  *See also Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.").  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability" under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *Butler v. City of Normal*, 992 F.2d 1053, 1055 (10th Cir. 1993) (also noting that "the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*").

Moreover, a plaintiff cannot establish liability unless he or she can demonstrate that the failure to supervise or provide specific training has a causal nexus with the alleged injuries and that the lack of supervision or specific training "can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.' " *Gilles v. Davis*, 427 F.3d 197, 207 n. 7 (3d Cir. 2005) (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).  Thus, in order to succeed on such a claim, it must be proven that the allegedly deficient training or supervision actually caused the injury.  *Reitz*, 125 F.3d at 145 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Close examination of the Amended Complaint, as well as the arguments advanced by Plaintiffs, make clear that the claims against the governmental entities cannot stand.  Plaintiffs have failed to allege any facts that would establish either a formal regulation or policy statement promulgated by the School District of City or Fort Lupton, or a "widespread practice" within the School District of Fort Lupton Police Department that was "so permanent and well settled as to constitute a 'custom or usage' with the force of law," or ratification of the individual defendants' actions by "final policymakers." For

31

example, Plaintiffs contend that Defendants Schwartz, Halloran, Luedtke and Morris "each separately and individually violated" Cyrus' rights on April 21, 2011.  Plaintiffs then presume that "[f]our separate officers on a tiny police force committing the identical constitutional violation on a single day against a single individual raises a reasonable inference of pattern, practice, and failure to train or supervise."  *See* Plaintiffs' Response in Opposition to the City of Fort Lupton's Motion to Dismiss (doc. #60), at 8.  A fair reading of Plaintiffs' own pleadings reveals an alleged "policy" or "custom" based solely on a single incident.  Notwithstanding that tenuous conclusion, Plaintiffs assert they are "entitled to the benefit of that inference at the pre-discovery stage" of these proceedings.  *Id.*

Plaintiffs also presume, based on the "minuscule" size of the police station, that "other officers or the chief could [not] fail to be aware that a child was brought to the station, placed in the interrogation room and interrogated without his parents being present."[11]  From that factually unsupported assumption,  Plaintiffs argue that "acquiescence by the chief or his designated representative was essential to the continued detention and interrogation."  *Id.*  That same conclusion is found in the Amended Complaint, which baldly asserts that the individual defendants violated Cyrus' rights "in the presence of the police department head and policymaker.  *See* Amended Complaint, at ¶116.  Elsewhere, the Amended Complaint affirmatively states that "the defendants engaged [in the alleged constitutional violations] in full view of Chief Poncelow, who is the policymaker for the City of Fort Lupton, and who approved and ratified their conduct."  *Id.* at ¶122.  Yet Plaintiffs' counsel

---

[11]Even if the court were to accept the unsubstantiated assumption that other rank-and-file officers must have been aware of Cyrus' interrogatory, "[a] municipality will not be found liable under a ratification theory unless a final decision maker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions."  *Stewart v. City of Prairie Village*, Kansas, 904 F. Supp. 2d 1143, 1161 (D. Kan. 2012) (quoting *Bryson v. City of Oklahoma*, 627 F.3d 784, 790 (10th Cir. 2010)).  *See also Wallace v. Powell*, No. 3:09-cv-286, 2009 WL 6850318, at *15 (M.D. Pa. Nov. 20, 2009) (holding that a final policy-maker without knowledge of a subordinate's unconstitutional decisions or action cannot adopt those actions or decisions on behalf of the municipality).

admitted in response to the court's questions during the hearing on January 14, 2014, that the allegation in Paragraph 122 of the Amended Complaint was not based on fact, and that indeed Cyrus' interrogation had not occurred in"full view" of the Fort Lupton police chief.

The inadequacy of Plaintiffs' *Monell* claims is illustrated by the Sixth Claim in the Amended Complaint, which asserts retaliation in violation of the First Amendment and is brought only against the City of Fort Lupton.  In support of this claim, Plaintiffs made a conclusory reference to a "culture of misconduct, official oppression, and mistreatment of citizens" within the police department.  The Sixth Claim alludes to an incident in which unspecified police officers, "including and led by [Defendant] Schwartz were alleged to have broken and entered a citizen's home and conducted an illegal search therein" and then "made untruthful statements under oath."[12]  The Sixth Claim also makes passing reference to unspecified "allegations of retaliation and official oppression brought by citizens and employees of the City."  Finally, the Sixth Claim attempts to support a failure to train or supervise by referencing a Sergeant Amaryllis, who "admitted, under oath, that he had unlawfully arrested Jason Gallegos in retaliation for Gallegos's exercise of his constitutional right to petition for redress."  *Id.* at ¶143.  For whatever reason, Plaintiffs have elected not to name Sergeant Amaryllis as a defendant in this action.  *But see Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted).

This court is particularly struck by Plaintiffs' failure to learn from the pleading deficiencies that plagued their earlier case.  On October 12, 2012, Magistrate Judge Hegarty recommended that "the

---

[12]There is nothing in the Amended Complaint that would suggest or even imply that the home in question belonged to Plaintiffs.

District Court grant the School Defendants' and Police Defendants' motions to dismiss Plaintiffs' claims against the municipalities brought pursuant to *Monell*." *Gallegos v. City of Fort Lupton*, 2012 WL 6212856, at *21. Magistrate Judge Hegarty concluded that "because the Plaintiffs identify only a single incident of unconstitutional conduct, the Court finds the Plaintiffs' allegations do not establish the violation of a municipal policy or custom as described by the Supreme Court in *Monell*." *Id.* In this case, during the hearing on January 14, 2014, Plaintiffs' counsel conceded that she could not tell me that the Amended Complaint in this pending litigation contained any facts that had not been included in the Amended Complaint that Magistrate Judge Hegarty found deficient under *Monell*. Given that concession, I can find no factual or legal justification for reaching a different result in this case.

In sum, Plaintiffs' "failure to train and supervise" claims against the City of Fort Lupton and the School District consist of nothing more than conclusory allegations. There are no well-pled facts that demonstrate the existence of a established government policy or custom that deprived them of constitutional right policy, or no well-pled facts that demonstrate specific deficiencies in the training or supervision of any school employees or police officers. The Amended Complaint does not set forth any facts that would demonstrate the School District or the City were deliberate indifference to the rights of persons with whom their employees come into contact, or that deficiencies in training or supervision actually caused the injuries alleged by Plaintiffs. *Cf. Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014) (rejecting plaintiff's § 1983 causation theory that predicated liability on the defendants' inaction; to establish deliberate indifference, plaintiff must establish "that the need for more or different action was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city ca reasonably be said to have been deliberately indifferent to the need").

## CONCLUSION

Accordingly, for the foregoing reasons, this court RECOMMENDS that the Motion to Dismiss Second, Third, Fourth, Six and Eighth Claims (doc. #53) filed by Defendants City of Fort Lupton, Crystal Schwartz and Kevin Halloran on October 1, 2013 be granted, and that Claims Two, Three, Four, Six and Eight of the Amended Complaint be dismissed with prejudice as to these Defendants.  I further RECOMMEND that Defendants Weld County School District RE-8, Mark Payler, Nativity Miller, Stephanie Anderson and Candace Kensinger's Motion to Dismiss Counts Seven, Eleven and Thirteen of the Amended Complaint (doc. #56), filed on October 1, 1013 be granted in part and denied in part.  Claims Seven and Thirteen of the Amended Complaint should be dismissed with prejudice as to all the Defendants named in those Claims.  Defendant Miller should be dismissed from Claim Eleven with prejudice, leaving Defendant Anderson as the only remaining defendant relative to that specific Claim.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo*

review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 19th day of May, 2014.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge

36